## No. 17,349.

CARL A. McLAUTHLIN, ET AL. *v.* CITY AND COUNTY OF DENVER, ET AL.

(280 P. [2d] 1103)

Decided March 7, 1955.   Rehearing denied March 28, 1955.

Mr. CHARLES R. HAYS, Mr. WILLIAM H. SCOFIELD, for plaintiffs in error.

Mr. JOHN C. BANKS, Mr. TY R. WILLIAMS, for defendants in error.

*En Banc.*

MR. JUSTICE BRADFIELD delivered the opinion of the Court.

THIS is a review on writ of error issued to the district court of the City and County of Denver. In the trial court plaintiffs in error were plaintiffs and defendants in error were defendants, and they will herein be designated as they there appeared.

In the trial court plaintiffs sought an injunction "restraining the defendants from installing * * * athletic facilities * * * and from expending the proceeds of the bond issue" of 1948 for athletic purposes in Congress Park. Trial was to the court resulting in findings and a judgment dismissing the complaint. Motions to vacate judgment and for a new trial were denied.

The area originally known as Congress Park was a congressional grant to Denver. A part of that grant is now Cheesman Park; another part was devoted to cemetery purposes and still another part was acquired and now is used by the Denver Water Board for a sub-surface city reservoir and other municipal structures. The eastern one-third of the original grant is the land here in controversy and has gradually reverted to park purposes, now designated "Congress Park." It comprises some eight blocks, approximately from 8th to 9th Avenues and from Detroit Street west to Josephine Street. Denver Ordinance No. 31, Series 1895, dedicated this area as a public park. Denver's charter of 1904, section 86 [101] provides: "No portion of Congress Park * * * shall be sold or leased at any time." This Congress Park area remained undeveloped for park purposes for many years. Eventually the westerly two-thirds was equipped for a city nursery and later as playgrounds and the easterly

one-third rented for victory gardens. These gardens becoming obnoxious, the adjoining property owners instituted a suit in the district court in the City and County of Denver, and on March 30, 1946 obtained a decree enjoining the leasing thereof and requiring the area to be developed as a park. This decree was not judicially reviewed and became binding on defendants.

Thereafter, Congress Park not having been improved as ordered under the decree, plaintiffs instituted an action in said district court in contempt against defendants. At the hearing thereon defendant city officials presented a plan for the development of the park area, whereupon the contempt proceedings were dismissed. A writ of error issued by this Court was dismissed as pertaining to a non-reviewable judgment. Early in 1953 defendant city commenced the development of Congress Park by installing therein recreational and playground facilities.

In June of 1952 the adjoining property owners instituted this action in said district court, (1) To enjoin defendant Denver and its officials from carrying out the proposed plan for the development of the park as constituting a threatened nuisance; and (2) to enjoin the use of the proceeds of a 1948 bond issue therefor. Defendants by their answer admit the decree in the former action and that they are bound thereby; admit their plan to install recreational equipment in the park; but deny same would constitute a nuisance; also deny that the use of the bond money for recreational purposes in the park is a misapplication of public funds; deny the past failure of the city Manager of Improvements and Parks constituted an abuse of discretion; and deny that sufficient time had elapsed to comply with the former court decree.

The trial court found (here summarized): That on March 30, 1946, a final decree was entered by the district court of the City and County of Denver ordering the Manager of Improvements and Parks "within a reasonable time [to] put said portion of Congress Park hereto-

fore leased to the use for which it was created, namely, a 'public park.' ' "

"* * * The Manager of Improvements and Parks, pursuant to the Charter provision and decree of the court, has laid out and proposes to improve the easterly portion thereof to carry out the purposes for which the ground was dedicated."

"The plaintiffs complain that the proposed plan is and would, if carried out, be a nuisance and not a use for park purposes. The issues have simmered down to whether or not the proposed plan * * * and particularly the swimming pool and bathhouse adjacent thereto, is or is not in violation of the dedications, in that a swimming pool and bathhouse are not uses for a park.

"* * * Under the charter provision the Manager of Improvements and Parks is vested with the sole authority to lay out, regulate and improve Congress Park. * * * and where he uses his discretion fairly, reasonably, and honestly, the Court will not substitute its own for that of the Manager in directing the type of improvements and recreational uses to which the park may be put. Therefore, the whole question is whether or not he has abused his discretion."

"* * * many children live in the area surrounding the park; that swimming is a form of pleasure, exercise, amusement, and recreation to many youths and adults alike. * * * that a swimming pool and bathhouse not properly managed may be a source of annoyance, nuisance, and evil in the neighborhood, but that is administrative, and every public official is given the presumption that he will conduct his office and discharge his duties to the best interest of the public * * *."

"* * * that the erection of a swimming pool and bathhouse is a proper park use, and the Manager of Improvements and Parks has not abused his discretion in planning the installation of the same in Congress Park."

"* * * the plaintiffs contend that the use of a portion of that fund [the proceeds of a 1948 bond issue for recre-

ation facilities] for the purpose of a swimming pool and bathhouse in a park is unlawful and contrary to its contemplated use; * * * [that] unless there was a clear mandate by the people not to use the proceeds of the bond issue in a municipal park to construct and improve athletic facilities and playgrounds therein, it is clearly discretionary with the authority vested in the Manager."

The Denver City Charter of 1904, section 84, provides, inter alia: "The commission [Manager of Improvements and Parks] shall have exclusive management and control of all parks and parkways, and exclusive power to lay out, regulate and improve the same, and to prohibit * * *."

The Speer amendment to the Denver Charter, adopted May 17, 1916, section 3, Article III, reads as follows: "There shall be and hereby is created a department of improvements and parks which shall have full charge and control of all public improvements and works heretofore under the Board of Public Works and the Commissioner of Improvements, likewise full charge and control of all parks within and without the city * * *."

Plaintiffs' grounds for reversal are here summarized: (1) There was "error in limiting the issue as to whether or not a swimming pool was a park purpose;" (2) "error in the court's refusal of an injunction * * * on the grounds that it could not control the discretion of the officials in charge of the park;" (3) "the installation of all these athletic facilities in a small park converts it into a playground instead of a park * * *;" (4) "diversion of the proceeds of the 1948 bond issue * * * for * * * recreational facilities * * * to the improvement of Congress Park is a misapplication of public funds;" (5) "error in the outright dismissal of the action;" (6) the court erred in holding "that because the charter gives to the manager exclusive custody and control of the park the court is powerless to exercise any control over him."

The trial court found no evidence of an existing or contemplated nuisance that would authorize injunctive

relief; that the athletic facilities, including the swimming pool and bathhouse, as proposed to be installed in Congress Park, did not violate the dedication for park purposes; that under the city charter, as amended, the Manager of Improvements and Parks had exclusive management and control of all parks and exclusive power to lay out, regulate and improve same, with which the courts may not interfere so long as he uses his discretion fairly, reasonably and honestly; and found that he had not abused his discretion. The evidence disclosed that the area for the proposed playground and recreational facilities constituted less than 50% of the total park area.

■ Query: Is the installation of a swimming pool and bathhouse in a public park, for the use of the public, a park purpose? The answer is yes.

"In times past a park was understood to be an open square or plaza, usually containing shade trees and seats. * * * a park, in this country may be defined as a piece of ground acquired by a city or town, for ornament; and as a place for the resort of the public for recreation and amusement * * *." *Ocean Beach Realty Co. v. City of Miami Beach*, 106 Fla. 392, 143 So. 301.

■ In an early Colorado case, *McIntyre v. El Paso County*, 15 Colo. App. 78 (1900), 61 Pac. 237, the modern concept of a park is recognized as follows:

"The term 'park' in its ordinary and usual significance, imparts a plot of ground in a city or town set apart for ornament, a place which the residents of the municipality may frequent for pleasure and exercise or amusement. It is, besides, conducive to health, furnishing to the citizens of crowded cities a place where they may breathe the pure air, untainted by smoke and noxious gases."

"A public park is ground used for public recreation. Since the public has various recreational preferences, the use of a public park may also vary. Swimming is a popular and healthful recreation. So we are of the opinion that a public swimming pool is within the definition of

228

a public park * * *." *Ashworth v. City of Clarksburg,* 118 W. Va. 476, 190 SE 763; also *Smith et al. v. Fuest,* 125 Kan. 341, 344, 263 Pac. 1069.

"The cases are abundant and uniform both in this and other states, holding that the devotion of a reasonable portion of a public park to tennis courts, croquet grounds and children's playgrounds, with such suitable appliances for these forms of public amusement and recreation, comes strictly within the proper and legitimate uses for which public parks are created." *Caulfield v. Berwick,* 27 Cal. App. 493, 150 Pac. 646; also, *Los Angeles County v. Dodge,* 51 Cal. App. 492, 197 Pac. 403.

■■ In this jurisdiction we have adopted the modern concept for a dedicated public park. That while an entire area of a park may not be converted to playground or recreational uses; nevertheless, when, considering the size and location of the park, its environments, density of adjacent population and their public needs, it is proper and legitimate that a reasonable portion of a park area be set aside and used for playground and recreational purposes. These uses would include tennis courts, playground and dancing facilities, skating, a swimming pool and bathhouse, horseshoe pitching, walking, horseback riding, athletic sports and other outdoor exercises, as may be needed, and if conditions are conducive therefor, golfing and baseball with the necessary equipment therefor, and with car parking facilities for the use and convenience of patrons and the public; provided always that a substantial portion of the park area remains in grass, trees, shrubs and flowers, with seats and tables for picnicking, for the use by, and enjoyment of, the public. The Denver charter grants the Manager of Improvements and Parks broad discretion in determining the uses to which a particular park area may be put.

■ In the instant case there is ample evidence in the record to support the trial court's findings; and having been determined upon conflicting evidence, they will not

be disturbed on review. The law was properly applied to the facts so found.

The judgment of dismissal of the action is affirmed.

Mr. Justice Lindsley does not participate.