94 So.2d 597 (1957)
Kathryn Abbey HANNA, Frank D. Upchurch, Howard Odom, John D. Pennekamp and Mrs. Eugene Jones, as and constituting the Florida Board of Parks and Historic Memorials, a State agency, Appellants,
v.
SUNRISE RECREATION, Inc., a corporation, Antioch College, a corporation, John C. Durfey, as Administrator de bonis non with will annexed of the estate of Hugh Taylor Birch, deceased, Philip Dressler, as ancillary administrator with will annexed of the estate of Hugh Taylor Birch, deceased, Appellees.
Supreme Court of Florida, Special Division B.
March 13, 1957.
On Petition for Clarification April 17, 1957.
*598 Richard W. Ervin, Atty. Gen., and Ralph M. McLane, Asst. Atty. Gen., for appellants.
John C. Durfey, Springfield, Ohio, and Phillip Dressler, Fort Lauderdale, for appellees.
O'CONNELL, Justice.
The appellants are the members of the Florida Board of Parks and Historic Memorials, an agency of the State of Florida. Appellants, whom we will refer to as the Board, brought a chancery action for declaratory decree against the appellees, as defendants in the court below.
From an order dismissing, with prejudice, the Board's bill of complaint this appeal is brought to us.
From the complaint and exhibits attached thereto it appears that Hugh Taylor Birch, in the year 1941, conveyed to the Board's predecessor a tract of land in Broward County, Florida, which tract is now known as Hugh Taylor Birch State Park; that the deed conveying said lands, a copy of which was attached to the complaint, was made to the Board's predecessor "for State Park purposes only, for the use, benefit and enjoyment of the public forever."
The grantor, Birch, who died in the year 1943, retained by the terms of the deed a life estate in the tract retaining the right "to continue the development and improvement of the said premises as he may desire."
The deed provided that the Board would "fully cooperate with the grantor herein in the furtherance of the program of development and improvement of said property heretofore undertaken and now being prosecuted by" the grantor, Birch. It also provided that the Board, after the death of grantor, would "continue to maintain said property as a State Park; will, so far as and to the extent that financial and other means are available, continue to improve and develop the same as a State Park along the lines adopted and followed by the grantor herein, and that in event said property ceases to be used for the purposes aforesaid and is abandoned by the said Florida Board of Forestry and Parks, its successors or assigns, as a State Park, for any continuous period of one year, title thereto shall revert to and become a part of the corpus of the estate of the grantor herein."
*599 The Board alleged that it had negotiated and proposed to lease to Sunrise Recreation, Inc., a portion of the park which is now a swamp or marsh. From the briefs filed before us it appears that the area proposed to be leased comprises about one third of the total area of the park, and is now in its natural state.
The Board alleges the the defendants, who are the Estate of Hugh Taylor Birch, the residuary legatee under his will, and the proposed lessee of the Board, all question the authority and the power of the Board to enter into the proposed lease with said lessee. A copy of the proposed lease was attached to the bill of complaint.
The lease in question is for a term of 20 years, with option for an additional term of 10 years. It gives the lessee a right to construct, at lessee's expense, and operate certain facilities, which shall be open to the public, with fees to be charged by lessee as may be approved by the Board. The facilities to be constructed are:
An 18 hole, 3 par, golf course and pro shop; practice golf driving range; putting green, tom thumb golf course; restaurant and refreshment facilities; tennis courts; table tennis; horseshoes; swimming pool; landing for small boats and administrative offices.
At the end of the lease the facilities shall become the property of the Board.
In his order granting defendants' motion to dismiss the chancellor determined that
(1) the complaint failed to state a cause of action;
(2) the Board is not authorized by law to enter into the proposed lease in that the provisions of the lease exceed and are contra to the authority conferred on the Board by Sec. 592.07(3), F.S.A.; and
(3) the uses contemplated by the lease are not "park purposes" as required by the deed involved herein.
The Board contends that it has the authority to execute a lease such as proposed herein. On this point we must agree with the Board.
The pertinent section of the Florida Statutes, § 592.07(3), F.S.A., reads as follows:
"(3) The board may grant privileges, leases, concessions and permits for the use of land for the accommodation of visitors in the various parks, monuments and memorials, provided no natural curiosities or objects of interest shall be granted, leased or rented on such terms as shall deny or interfere with free access to them by the public; * * *" (Emphasis ours.)
Appellees contend that the authority of the Board contained in the section of the statutes next above quoted is so limited as not to authorize the Board to lease park land, but to authorize only the granting of use of such land for periods shorter than set forth in the proposed lease. They support this contention by urging application of the doctrine of ejusdem generis, and by pointing out that the Florida Board of Forestry, the parent of the Board involved here, can lease lands only with consent of the Governor and Trustees of the Internal Improvement Fund and then after public notice, F.S. § 589.10, F.S.A., yet no such safeguard is placed on the Board involved here.
While the comparison of the powers to lease of the Florida Board of Forestry and the Board involved here are interesting we do not believe that it follows that because the legislature limited the power of one agency to lease lands, it must have also intended to limit the power of another agency to do so.
The doctrine of ejusdem generis applies where the enumeration of specific things is followed by a more general word *600 or phrase, and in such cases the general phrase is construed to refer to a thing of the same kind or species as included within the preceding limiting and more confining terms. Dunham v. State, 1939, 140 Fla. 754, 192 So. 324.
The Board contends that the above-mentioned doctrine is not applicable here because the word leases does not follow the words which defendants consider to be of limitation. The Board urges that another rule of statutory construction governs the interpretation of the word leases. This rule, announced in State ex rel. Bie v. Swope, 1947, 159 Fla. 18, 30 So.2d 748, is that where words in a statute have a definite meaning courts have no power to go elsewhere in search of conjecture to restrict or extend such meaning.
To follow defendants' contention that the doctrine of ejusdem generis applies we must assume that the words "privileges," "concessions" and "permits" all mean something less and are more limited than the ordinary meaning of the word leases. This does not follow. For example in Rendall v. Pioneer Hotel, 1950, 71 Ariz. 10, 222 P.2d 986 the court deals with the words concession and lease. The court points out in that case that where the concessionaire is given an exclusive right to real property his rights are identical with those of a lessee.
There is nothing in the above-mentioned statute which limits the length of time for which the privileges, leases, concessions and permits may be granted by the Board, or the conditions of such grants.
The only limitation placed on the authority of the Board in the above quoted section of the statutes is that "* * * no natural curiosities or objects of interest shall be granted, leased or rented on such terms as shall deny or interfere with free access to them by the public; * * *." The land involved here does not appear to be a curiosity or object of interest.
This latter portion of the statute gives support to the Board's contention for here the words "granted, leased or rented", all of which are less limited in scope than privileges, concessions and permits, are used. Unless the legislature considered it had given the Board authority to grant, lease or rent there would be no reason for limiting its authority to exercise these powers as related to curiosities and objects of interest.
We feel that from a reading of the whole section of the statute the word "leases" should be given its ordinary and accepted meaning and that the Board has the authority to enter into a lease of real property owned by the Board, providing the uses to which the leased property are to be put are consistent with the uses which the Board itself could make thereof under the law, and consistent with the terms of the dedication where acquisition is by private grant, as in this case.
But determining that the board has the power and authority under the statutes to execute a lease of its lands for a term of years is not sufficient to dispose of the questions before us.
The parties agree that the terms of dedications of lands for park purposes where the lands are conveyed by private individuals are to be construed more strictly than is the case where the lands are acquired by the public body by purchase or condemnation. 39 Am.Jur., Parks and Playgrounds, Sec. 21, p. 817.
The dedication in the deed involved here was for "State park purposes". No authorities have been cited to show the meaning thereof. We must therefore consider that this term means the same thing as park purposes.
In Ocean Beach Realty Co. v. City of Miami Beach, 1932, 106 Fla. 392, 143 So. 301, we adopted the definition of a park as given in 20 R.C.L. 638. This definition explains *601 the change in concept of a park from the time when a park was understood to be an open square or plaza, usually containing shade trees and seats, to the present, when a park is considered not only as ornamental but also as a place for recreation and amusement. Changes in the concepts of parks have continued and the trend is certainly toward expanding and enlarging the facilities for amusement and recreation found therein. This is demonstrated to some extent by the guide map of the park in question, as it now exists, a copy of such map being attached to the bill of complaint. This map shows roads, a parking area, a garden club center, a comfort station, administration building, refreshment building, Elks Group Camp, canoe shelter and city fire station.
As a tourist state, Florida, its counties and cities have made great effort to furnish public facilities, parks, which are attractive to and furnish recreation and amusement for not only its citizens but its tourist visitors as well.
This is reflected in the statement of policy wherein the Board is committed to the promotion of the park system for the use, enjoyment, and benefit of the people of Florida and visitors and in such manner as to contribute to the tourist appeal or Florida. F.S. § 592.12, F.S.A.
We think the view which defendants take of the term park purposes is too narrow, and are inclined to follow the view expressed in McLauthlin v. City and County of Denver, 1955, 131 Colo. 222, 280 P.2d 1103, 1106, wherein that court said:
"In this jurisdiction we have adopted the modern concept for a dedicated public park. That while an entire area of a park may not be converted to playground or recreational uses; nevertheless, when, considering the size and location of the park, its environments, density of adjacent population and their public needs, it is proper and legitimate that a reasonable portion of a park area be set aside and used for playground and recreational purposes. These uses would include tennis courts, playground and dancing facilities, skating, a swimming pool and bathhouse, horseshoe pitching, walking, horse-back riding, athletic sports and other outdoor exercises, as may be needed, and if conditions are conducive therefor, golfing and baseball with the necessary equipment therefor, and with car parking facilities for the use and convenience of patrons and the public; provided always that a substantial portion of the park area remains in grass, trees, shrubs and flowers, with seats and tables for picnicking, for the use by and enjoyment of the public. * *"
We therefore are of the view that the facilitites and use proposed to be made of the land involved here is not such as to be necessarily inconsistent with park purposes.
Nor does it appear that the portion of the park proposed to be leased and put to use as recreational facilities is so great as to make the principal use of the park a playground or recreational center rather than a park. The area proposed to be leased is designated as a "marsh". It apparently is not being used at this time. It is only about 1/3 of the park area. Such use would not amount to an ouster of the public therefrom.
The fact that charges will be made for use of the facilities and that a private corporation will profit therefrom are not controlling. The Board is authorized by statute, Sec. 592.072, F.S. 1955, F.S.A., to make charges to the public who use the facilities of the park. And we have held that the fact that a private corporation or individual will incidentally profit from the transaction does not in itself defeat a public purpose. State v. Daytona Beach Racing *602 and Recreational Facilities District, Fla. 1956, 89 So.2d 34; Sunny Isles Fishing Pier v. Dade County, Fla. 1955, 79 So.2d 667.
We are therefore of the opinion that the uses contemplated under the proposed lease may be properly classified as park purposes.
However, whether they are such uses as were intended to be made of the park under the terms of the deed from the grantor to the Board is quite another matter.
In addition to dedicating said lands for State park purposes, the grantor required that the Board, insofar as its funds would permit, "* * * continue to improve and develop the same as a State park along the lines adopted and followed by the grantor. * * *."
It may well be that, when evidence is taken, it will become apparent that the development proposed to be made under the proposed lease will be a departure from the plans of development initiated by the grantor. If so, the development and use proposed under the lease should not be permitted.
The plan of the grantor can only be determined after taking evidence. We are here concerned only with the pleadings in this cause, and the applicable law.
Defendants contend that the Board in its bill of complaint should have but failed to allege that the improvements and development as well as the uses contemplated under the proposed lease were in accordance with the "* * * lines adopted and followed by the grantor. * * *"
The bill of complaint is silent of allegations that the proposed development and uses are consistent with the restrictions contained in the deed, either as to allegations that the proposed use constitutes State park purposes, or allegations as to the requirement that the development be according to lines adopted and followed by the grantor. These were necessary allegations and we agree that the bill of complaint was insufficient for this reason.
The chancellor properly dismissed the bill of complaint, but he should not have done so with prejudice. The Board should be given the opportunity to amend to make its bill of complaint conform with this opinion, if it can do so.
We hold by this opinion that the Board has the authority to lease its lands for a term of years to individuals for use for park purposes and that the facilities and uses contemplated in the proposed lease are proper park purposes. We further hold that the restriction imposed by the grantor in the deed of conveyance to the Board, whereby the Board is required to develop the park along the lines adopted and followed by the grantor prior to his death, is controlling and after proof of such plan the chancellor must determine whether the proposed development and use is consistent with the intent of the grantor.
We further hold as above explained that the bill of complaint is defective but that the Board should be allowed the right to amend same if it chooses.
The order appealed from is reversed in part and affirmed in part.
TERRELL, C.J., and THOMAS and DREW, JJ., concur.

On Petition for Clarification
The appellant Board has filed a petition for clarification of our opinion herein. The Board argues that if on taking of evidence it is made to appear that the grantor of the lands in question had not ever, in fact, adopted and followed a definite plan of development of said lands that the Board will not be able to allege and prove that the proposed development and use of the park "* * * were in *603 accordance with the * * * lines adopted and followed by the grantor * * *."
The Board should only be required to allege and prove that which is necessary to show compliance with the conditions and/or restrictions in the deed by which it acquired title. If the Board alleges and proves that the grantor had not in fact ever adopted and followed a definite plan to develop the lands this would be sufficient. It seems apparent to us under the terms of the deed that unless such a plan was adopted and followed by the grantor that the abovementioned condition must be construed to mean that the lands must be developed and used for park purposes, generally, rather than under a specific plan of the grantor. We held in our opinion that the plan of development proposed by the Board and its lessee was for park purposes.
With this clarification we adhere to our original opinion.
TERRELL, C.J., and THOMAS and DREW, JJ., concur.