SHANNON, Judge.
Appellants, plaintiffs below, seek a reversal of a decree denying injunctive relief and dismissing with prejudice their complaint for declaratory and other relief. The appellees, Gulfport Lion’s Little League, Inc., and the City of Gulfport a municipal corporation, were defendants below.
The real question in issue is whether the City of Gulfport may enter into a lease with Gulfport Lion’s Little League, Inc., a nonprofit corporation, and lease to it for a period of ten years a portion of a park for the purpose of using the same as a baseball field. The chancellor, after taking testimony, refused to grant a temporary injunction to the plaintiffs and dismissed their bill with prejudice. The validity of the lease is dependent upon whether the City has the power to lease to a nonprofit corporation for purposes set out in the record and subject to the restrictions that we will set forth here.
The piece of property involved herein, known as Tomlinson Park, has been dedicated to public uses as a public park since May 9, 1924. The lease referred to was only for a portion of the dedicated property. The Florida Little Major League Association, Inc., and the Gulfport Lion’s Little League, Inc., are both nonprofit Florida corporations which organize and sponsor baseball for small boys. Prior to the time that this controversy arose, the Gulfport Lion’s Little League, Inc., and its predecessors, had used the said baseball field under resolution adopted and passed by the City of Gulfport. The resolution of the City granting permission to the defendant provided that:
“The Lions Club of Gulfport shall have the privilege of priority use of this baseball field; * * * for sport and recreational purposes, under the general supervision * * * of the Governing Body of the City of Gulf-port; * * *”
The record shows that both corporations conduct and supervise baseball for small boys and the purpose of each corporation is almost identical. The record shows that the Gulfport Lion’s Little League, Inc., had a baseball diamond, stands, and concession stands in Tomlinson Park; that the only cost to the City had been the electricity used at the field, which cost about $150 a year, and a pump that the City furnished to water the field.
The City of Gulfport has the usual powers in regard to its authority to deal with parks. Gulfport’s City Charter, Chapter 30650, Special Laws of 1955, as amended by Chapter 30790, Special Laws of 1955, grants to the City the broadest possible powers that could be granted to the City under the provisions of our Constitution. For instance, the Charter provides in part:
“Section 7. (a) The City shall have all the powers granted to municipal corporations and to cities by the constitution and general laws of this state together with all the implied powers necessary to carry into execution all the powers granted.
* * * * * *
“(d) The City, not in limitation of the foregoing, may purchase, lease, receive and hold property beyond the limits of the City for * * * the establishment of * * * public * * parks * * * and for such other public works as the council may deem necessary and proper, and may sell, lease or otherwise dispose of such property for the benefit of the City * * * and the City shall have such incidental powers and authority as may be necessary or proper to carry out the specific powers herein granted by this charter.
* * * * $ *
“Section 12. Powers of City Council: All powers of the City and the determination of all matters of policy shall be vested in the council. Without limitation of the foregoing, the council shall have power to; * * *
* * * * * *
*709 “18. In addition to the acquisition and ownership of real estate and personal property provided for in this charter, the City is empowered to operate said property for such public purposes as the council shall consider advisable, and may sell, lease or otherwise dispose of said property for the benefit of the City, * * * ”
The chancellor, in his final decree, said in part:
“ * * * and having further found that the City of Gulfport had the legal right, power and authority to grant to Gulfport Lion’s Little League, Inc., the exclusive right to use the baseball field located upon Tomlinson Park, and that the City of Gulfport further has the right, power and authority to enter into a lease for a term of ten (10) years of subject property, if it so desires, with Gulfport Lion’s Little League, Inc., the court feeling that the case of Hannah v. Sunrise Recreation [Fla.], 94 So.2d 597, cited by defendants is applicable in this particular case, and that the case cited by plaintiffs, to-wit: Kramer v. City of Lakeland [Fla.], 38 So.2d 126, is not applicable in this particular case, * * * ”
We have considered the various cases in Florida which throw some light upon the question we have and have concluded that the chancellor’s decision is correct, and that in addition to Hannah v. Sunrise Recreation, Fla.1957, 94 So.2d 597, the case of Raney v. City of Lakeland, Fla.1956, 88 So.2d 148, as well as Kramer v. City of Lakeland, Fla.1948, 38 So.2d 126, support the appellees, although this last case was cited by the appellants.
In Hannah v. Sunrise Recreation, supra [94 So.2d 599], the Supreme Court held that the Board of Parks and Historic Memorials had the authority to enter into a lease of dedicated property to a private corporation of a portion of the land for a golf course and amusement facilities, the lower court stating in its order dismissing the bill that:
“(2) the Board is not authorized by law to enter into the proposed lease in that the provisions of the lease exceed and are contra to the authority conferred on the Board by Sec. 592.07 (3), F.S.A.; and
“(3) the uses contemplated by the lease are not ‘park purposes’ as required by the deed involved herein.”
Our Supreme Court reversed that portion of the chancellor’s decree, saying through Mr. Justice O’Connell:
“The dedication in the deed involved here was for ‘State park purposes’. No authorities have been cited to show the meaning thereof. We must therefore consider that this term means the same thing as park purposes.
“In Ocean Beach Realty Co. v. City of Miami Beach, 1932, 106 Fla. 392, 143 So. 301, we adopted the definition of a park as given in 20 R.C.L. 638. This definition explains the change in concept of a park from the time when a park was understood to be an open square or plaza, usually containing shade trees and seats, to the present, when a park is considered not only as ornamental but also as a place for recreation and amusement. Changes in the concepts of parks have continued and the trend is certainly toward expanding and enlarging the facilities for amusement and recreation found therein. * * * ”
In speaking of parks, Mr. Justice O’Con-nell has this to say:
“We think the view which defendants take of the term park purposes is too narrow, and are inclined to follow the view expressed in McLauthlin v. City and County of Denver, 1955, 131 Colo. 222, 280 P.2d 1103, 1106, wherein that court said:
*710 “ ‘In this jurisdiction we have adopted the modern concept for a dedicated public park. That while an entire area of a park may not be converted to playground or recreational uses; nevertheless, when, considering the size and location of the park, its environments, density of adjacent population and their public needs, it is proper and legitimate that a reasonable portion of a park area be set aside and used for playground and recreational purposes. These uses would include tennis courts, playground and dancing facilities, skating, a swimming pool and bathhouse, horseshoe pitching, walking, horseback riding, athletic sports and other out door exercises, as may be needed, and if conditions are conducive therefor, golfing and baseball with the necessary equipment therefor, and with car parking facilities for the use and convenience of patrons and the public; provided always that a substantial portion of the park area remains in grass, trees, shrubs and flowers, with seats and tables for picnicking, for the use by and enjoyment of the public. * *
In Raney v. City of Lakeland, supra, the plaintiffs, citizens and taxpayers, together with members of certain clubs, appealed a summary final decree denying an injunction and sustaining the validity of a 99-year lease of publicly-owned land. The Supreme Court, in affirming Circuit Judge William P. Allen, who is now Chief Judge of this Court, stated, in relation to the purposes revealed by the record [88 So.2d 149]:
"On September 28, 1954, the city, as lessor, executed in favor of certain individuals, as trustees of the Garden Club of Lakeland, Inc., a 99-year lease covering the land at an annual rental of $1 and other considerations. Among other things the lease provided that the lessee would not permit any use of the land for any purpose ‘of industry or commerce for private gain but shall use said premises only in furtherance of the general objects of the Garden Club of Lakeland, Inc.,’ * * the non-profit corporation. * * *”
The Court, speaking through Mr. Justice Thornal, then deals with the question of decisions of municipal officials to lease such lands, using the following language:
“The lease involved recited that the city had no present or anticipated need for the land for governmental purposes and that it was executed to permit the enlargement of the program and facilities of the Garden Club for the furtherance of its work in behalf of the general welfare. Admitting the existence of the power, such decisions of municipal officials will not be disturbed absent a showing of fraud, bad faith or abuse of discretion. None is shown here. * * * ”
While Kramer v. City of Lakeland, supra, was cited with approval by the appellants as authority for their position, it can be easily seen, after a study of the opinion in that case, that the City of Lakeland was held not to have the authority to deed a portion of a certáin parkway, the court saying in part [38 So.2d 131]:
“Counsel for the Junior Chamber of Commerce cite Section 167.09, F.S.A., to sustain the contention that the City of Lakeland possesses plenary power over its streets, avenues, lanes, highways and parks. The answer to the contention is that the statute does not authorize the City of Lakeland to sell or transfer title to Munn’s Park which was dedicated to the general public of the City of Lakeland to be used and enjoyed by its citizens and visitors for what is commonly known and recognized as municipal park purposes. ^ ^ ”
The Kramer case simply holds that the municipality has no authority to deed or to lease any portion of a public park to the Federal Government for use by it as a site for a post office.
*711 In the instant case we do not think that the leasing of a portion of Tomlinson Park to the Gulfport Lion’s Little League, Inc., for use as a baseball field is inconsistent with the purpose to which the park was dedicated.
We fail to find any error in the record and hence the decision of the chancellor will have to be affirmed.
Affirmed.
ALLEN, C. J., and KANNER, J., concur.