346

MARYLAND-NATIONAL CAPITAL PARK AND
PLANNING COMMISSION ET AL. *v.*
WASHINGTON NATIONAL ARENA

[No. 1278, September Term, 1976.]

*Decided September 14, 1977.*

The cause was argued before MORTON, THOMPSON and
LISS, JJ.

*Sanford E. Wool* for appellant Maryland-National Capital
Park and Planning Commission.

*Edward G. Neal, Associate County Attorney*, with whom
were *James C. Chapin, County Attorney for Prince George's
County, Michael O. Connaughton, Deputy County Attorney*
and *David S. Bliden, Associate County Attorney* on the
brief, for appellant Prince George's County, Maryland.

Submitted on brief by *Francis B. Burch, Attorney General,* and *Ward B. Coe, III, Assistant Attorney General* for appellant State of Maryland.

*Peter F. O'Malley,* with whom were *Glenn T. Harrell, Jr.* and *O'Malley, Miles, Farrington & McCarthy* on the brief, for appellee.

LISS, J., delivered the opinion of the Court.

On August 11, 1971, the Maryland-National Capital Park and Planning Commission (hereafter, "Commission"), as lessor, entered into a lease agreement with Potomac Sports Limited, lessee, for a parcel of land of approximately fifty acres, known as a part of the "Kuenne tract," located near the interchange of Central Avenue (Maryland Route 214) and the Capital Beltway (Interstate Route 495). On August 1, 1972, Potomac Sports Limited assigned its interest in the lease to the Washington National Arena Limited Partnership (hereafter, "WNA"), the assignment having been approved by the Commission. On August 23, 1972, the Commission and WNA executed an agreement (hereafter, "Shared Park Agreement") for the joint use of an additional ten acres of the Kuenne tract. Title to all the land remained in the name of the Commission.

The stated purpose of the original lease agreement subsequently assigned to WNA was to provide for the construction of a sports arena to furnish major recreational attractions for the citizens of Maryland — in particular those residing in Prince George's and Montgomery Counties — consistent with the extensive park development program of the Commission. The subsequent Shared Park Agreement gave WNA the right to park automobiles on the ten acre parcel in return for which WNA was required to either pay a sum of money to the Commission for use in a recreational program in the area or, in the alternative, construct certain recreational equipment on the ten acre tract for use when no parking was in progress. WNA met its obligation under this agreement by payment of an agreed sum of money to the Commission.

Pursuant to the lease agreement, WNA erected an arena containing approximately 18,000 seats, which has been in operation since December of 1973 as the Capital Centre. The lease contained a tax clause in Paragraph 6(c) which required the lessee to pay all taxes, including ad valorem real estate taxes, as additional rent. Paragraph 6(c) further provided:

> "Lessee shall have the unrestricted right in its name to pursue such administrative and judicial procedures as may be necessary to contest and appeal from the amount of any assessment or valuation, and pay under protest any billing of real estate taxes or assessments, all or part of which are to be borne by the lessee under the terms of this Lease. Lessee further agrees that it will not contest or challenge any determination by the State Assessor that the real estate improvements are subject to real estate taxes; however, in the event that said real estate improvements are determined by the State Assessor not to be subject to real estate taxes, the lessee agrees to pay to lessor an additional annual rental over and above that provided in paragraph 5 of this Lease Agreement in the sum of $325,000.00."

On January 9, 1974, the Supervisor of Assessments for Prince George's County sent to the Commission a notice of assessment of the value of the 50 acre tract (*land only*), the subject of the lease, and the 10 acre tract (*land only*), the subject of the Shared Park Agreement — both tracts being considered together in the notice. The notice of assessment was forwarded to WNA, and on January 28, 1974, a formal letter of protest of the assessment was sent to the Supervisor of Assessments (hereafter, "Supervisor") in which WNA contended that it did not believe that the land was taxable; that there had been improper notification and service of the notice; and further protested the assessed valuation of the land. On February 22, 1974, another notice of assessment was mailed to the Commission, care of Abe

Pollin (general partner in WNA), assessing *the improvements* constructed by WNA on the 50 acre tract. A formal protest of this notice was sent by WNA to the Supervisor arguing that the notice was improper, that the improvements were not taxable, and that the assessed valuation placed upon the improvements was excessive. On November 21, 1974, final notices of assessment were sent by the Supervisor to the Commission, care of Abe Pollin.

Pursuant to Maryland Code (1957, 1975 Repl. Vol.), Art. 81, § 255, WNA filed a timely appeal to the Property Tax Assessment Appeal Board for Prince George's County (hereafter, "the Board") in which WNA raised the issues of the taxability of the land and improvements and the accuracy of the valuation of the improvements as determined by the State Assessor. That appeal had been before the Board for more than six months when the Commission filed its bill for declaratory judgment and injunction, which is the subject matter of this appeal. The bill in equity was filed nine days prior to a scheduled hearing before the Board on the issues raised by WNA.

In its bill, the Commission contended that Paragraph 6(c) of the lease between the parties amounted to a waiver and/or estoppel by and against WNA which precluded it from prosecuting an appeal of the Supervisor's determination that the *real property improvements* known as the Capital Centre were taxable. The Commission did not contend that WNA was not entitled to contest the Supervisor's conclusion that the *land* was taxable. By the time that the Commission's bill for declaratory relief and injunction came on for hearing in the Circuit Court for Prince George's County (Judge Samuel Meloy, presiding), the Board had already considered the appeal of WNA from the decision of the Supervisor and had reversed his decision, concluding that neither the land nor the improvements were taxable but rather that under the provisions of Art. 81, they were specifically exempt from taxation. The State of Maryland and Prince George's County entered an appeal from that decision which is now pending in the Maryland Tax Court.

Judge Meloy, after hearing argument and considering the memoranda filed by all the parties, reached the conclusion that Paragraph 6(c) of the lease was against public policy in that it would prevent access to the courts by the lessee and would thereby preclude judicial review of an arbitrary, capricious or illegal imposition of tax liability by the Supervisor of Assessments. It is from that conclusion that this appeal was taken. Antagonists in the appeal are the State of Maryland,[1] the Commission, and Prince George's County as appellants and WNA as appellee.

All of the parties have filed excellent briefs and presented cogent arguments concerning the legal effect of Paragraph 6(c) of the lease agreement, but none of them have raised the basic question which must be determined before the substantive issues in this matter may be reached, i.e., the question of the jurisdiction of the Circuit Court of Prince George's County.

Rule 1085 provides, "Where jurisdiction cannot be conferred on the court by waiver or consent of the parties, a question as to the jurisdiction of the lower court may be raised and decided in this Court whether or not raised or decided in the lower court." Therefore, even though the issue of jurisdiction was not raised or decided below — nor briefed and argued before us — that issue may be raised sua sponte by this Court under Rule 1085. *Wilson v. State,* 21 Md. App. 557, 321 A. 2d 549 (1974); *Moore v. State,* 15 Md. App. 396, 291 A. 2d 73 (1972). We believe it is necessary for us to raise and determine the issue of jurisdiction in order for this case to be considered in an orderly fashion and to avoid unnecessary and duplicative litigation.

Pursuant to the recommendations of the Tax Revision Commission established under Ch. 687, Acts 1927, the Legislature, by Ch. 226, Acts 1929, made a general revision

---

1. This matter was before this Court on a prior occasion in the case of Maryland-National Capital Park & Planning Commission v. Washington National Arena, 20 Md. App. 712, 354 A. 2d 459 (1976), in which we reversed the chancellor's decision denying a petition of the State of Maryland to be permitted to intervene. The State in this appeal has participated by way of brief and argument and has essentially concurred in the positions taken by Prince George's County and the Commission.

of the tax laws of Maryland. In so doing, it repealed former Art. 81 and enacted a new Art. 81 of the Maryland Code. The newly adopted article reenacted substantial portions of the existing laws on taxation and enacted additions and clarifications of that law. The principal purpose of the revision, however, was to "codify and clarify." *Meade Heights, Inc. v. State Tax Commission of Maryland,* 202 Md. 20, 95 A. 2d 280 (1953).

The Article as adopted provided for a series of elaborate hearing and appellate procedures which are available to anyone aggrieved by a tax assessment levied against real and personal property owned in the State of Maryland. Subsection (a) of Art. 81, §255, Code (1957, 1975 Repl. Vol., 1976 Cum. Supp.) provides:

> "With respect to any property assessed locally, any taxpayer, county or city, or the Attorney General or the State Department of Assessments and Taxation may demand a hearing before the supervisor of assessments or their respectively designated representatives, as to the assessment of any property or any unit of tax value, or as to the increase, reduction, or abatement of any such assessment, or as to the classification, for the next year."

Subsection (b) grants to any taxpayer, county or city, or the Attorney General, or the State Department of Assessments and Taxation on behalf of the State the right to demand a further hearing before the property tax assessment appeal board and a review of the initial determination by the assessing authority and the supervisor of assessments.

Any party aggrieved by the determination of the appeal board is permitted by § 256 (a) to appeal to the Maryland Tax Court because of any assessment or classification, or because of any increase, reduction, abatement, modification, change or alteration or failure or refusal to increase, reduce, abate, modify or change any assessment, or because of any

classification or change in classification, or refusal or failure to make a change.

The Maryland Tax Court was created by the Legislature by Ch. 757 of the Acts of 1959. That enactment provided that the Tax Court and State Department of Assessments were to be independent of each other but together would constitute a separate department of the State government.[2] The "quasi-judicial" functions of the then existing State Tax Commission were to be exercised by the Maryland Tax Court and its "administrative" functions were to be vested in the Department of Assessments and Taxation, the separation of the functions being the principal purpose of Ch. 757. *Montgomery County Council v. Supervisor of Assessments,* 275 Md. 339, 240 A. 2d 302 (1975).

The duties of the Tax Court, as set out in Art. 41, § 318, are as follows:

> "On and after July 1, 1959, the Maryland Tax Court shall have jurisdiction to hear appeals from the decision, determination, or order of any final assessing or taxing authority of the State, or of any agency, department or political subdivision thereof, with respect to the valuation, assessment, or classification of property, or the levy of a tax, or with respect to the application for an abatement or reduction of any assessment, or tax, or exemption therefrom."

Section 229 of Art. 81 adopted the procedure to be followed on appeals to and from the Tax Court and provided in subsection (c) that proceedings before the court shall be de novo and shall be conducted in a manner similar to proceedings in courts of equity in this State.

Subsection (h), which deals with the disposition of the cause, empowers the court:

> "[T]o assess anew, classify anew, abate, modify, change or alter any valuation, assessment,

---

2. See Code, Art. 81, § 224; and Code, Art. 41, § 318.

classification, tax or final order appealed from, provided that in the absence of any affirmative evidence to the contrary or of any error apparent on the face of the proceedings, the assessment, classification or order appealed from shall be affirmed."

Subsection (k) provides that in any proceeding before the court, "any party to such proceedings may submit requests for rulings on points of law, similar to prayers in nonjury cases in courts of law, and the Court shall grant, reject or modify the same, so far as may be material to its decision."

By subsection (m), an aggrieved party is granted an appeal from the final decision of the Maryland Tax Court to the circuit court of the county or Baltimore City in which the property or any part of it is situated.

The circuit court or the Baltimore City Court, by subsection (o), is required to determine the matter upon the record made in the Maryland Tax Court. The circuit court or Baltimore City Court is required to affirm the Tax Court order if it is not erroneous as a matter of law and is supported by substantial evidence appearing in the record. The reviewing court is empowered to affirm, reverse, remand, or modify the order appealed from.

Under subsection (p), any party to the proceedings may appeal from the order of the circuit court or Baltimore City Court to the Court of Special Appeals. A final right to appeal to the Court of Appeals may be granted upon application for a writ of certiorari.

The Commission sought declaratory relief and an injunction in this case contending that the lessee had waived its right to contest the determination of the Supervisor as to the taxability of the improvements erected on the land. We have detailed the elaborate system of hearings and appeals provided by the Legislature for the disposition of controversies involving taxes due on property in Maryland because the right to declaratory relief must be determined in light of the existence of such a statutory scheme.

The original Maryland Uniform Declaratory Judgments Act, Acts of 1939, Ch. 294, Code (1939), Art. 31A,[3] made no reference to the requirement, later adopted by the Legislature, that where a special form of remedy is provided for a specific type of case, that remedy must be followed in lieu of a declaratory proceeding. However, the Court of Appeals of Maryland in *Tawes v. Williams,* 179 Md. 224, 17 A. 2d 137 (1941), did recognize this principle. In that case, the taxpayer sought a declaration of her State income tax liability for funds received from a trust created by the will of her late husband and paid to her by a fiduciary in Pennsylvania. In reversing the lower court, which had assumed jurisdiction and issued declaratory decrees as to the issues raised by the widow's bill, the Court held that where a special statutory method was provided for the determination of a particular type of case, jurisdiction under the Declaratory Judgments Act did not exist. In giving its reasons for this conclusion, the Court said at page 228:

> "It thus appears that the Legislation has in detail specifically designated the manner in which the determination of the amount of income taxes due shall be made. It therefore appears that the special statutory remedy given by chapter 277 of the Acts of 1939 is exclusive of the general statutory remedy provided by chapter 294. It would seem most unlikely that the Legislature would have so elaborately provided this special statutory remedy and by enacting chapter 294 have intended to enable a taxpayer at his mere whim to impose the duties of administrative officers upon the courts.

> "Jurisdiction must exist in the present case, if at all, by virtue of the provisions of chapter 294, but since the Legislature at the same session has given specific jurisdiction first to the Comptroller, next to the State Tax Commission and successive appeals both to circuit courts and this court, this of itself is,

---

3. The present *Uniform Declaratory Judgments Act* is codified as section 3-401, et seq. of the Courts and Judicial Proceedings Article.

in our judgment, sufficient to show that it did not intend by the enactment of chapter 294 to confer jurisdiction in situations of this character. The Legislature has pointed out definitely certain tribunals and conferred upon them authority to decide the matter, and this being true, it must be held that the chancellor erred in concluding that under the allegations of the bill of complaint jurisdiction existed under the Declaratory Judgments Act."

In a later case, *Commissioners of Cambridge v. Eastern Shore Public Service Co.,* 192 Md. 333, 64 A. 2d 151 (1949), the Commissioners of the City of Cambridge sought from the Court a declaratory judgment that the Eastern Shore Public Service Co., a public utility, was without a franchise to supply electricity in Cambridge. Eastern Shore demurred on the ground that the lower court had no jurisdiction to issue a declaratory decree because the case fell within those cases which were provided "a special form of remedy for a specific type of case", as recited in § 6 of the Uniform Declaratory Judgments Act. In reversing the lower court's order sustaining the demurrer, the Court of Appeals noted that section 6 of Article 31A was amended in 1945 (Ch. 724, Acts of 1945) and that by recitals in the amendatory act, the Legislature had made it clear that it was the legislative intent to make the declaratory remedy freely available, regardless of whether another adequate remedy was available at law or in equity. Section 6 as amended then provided:

> "When, however, a statute provides a special form of remedy for a specific type of case, that statutory remedy must be followed; but the mere fact that an actual or threatened controversy is susceptible of relief through a general common law remedy, or an equitable remedy, or an extraordinary legal remedy, whether such remedy is recognized or regulated by statute or not, shall not debar a party from the privilege of obtaining a

declaratory judgment or decree in any case in which the other essentials to such relief are present; . . .." Id. at 338.

On the face of it, it would appear that *Cambridge* amounted to a renunciation of the principles stated in *Tawes*, but a closer examination discloses that the legal situation in the two cases is distinguishable on the facts. For example, in the former, the Court noted that the Public Service Commission was essentially a regulatory body and, as such, had no power to grant a franchise, which is a legislative function. It further noted that the validity or extent of charter powers or franchises were judicial questions. Under those circumstances, it concluded that the existence of a right to seek relief from the Public Service Commission was not such a statutory remedy as to preclude the determination of the legal questions in a proceeding for declaratory relief. It held, at 340-41:

"The enforcement of such a right seems to fall in the category of 'an equitable remedy, or an extraordinary legal remedy * * * recognized or regulated by statute', rather than 'a special form of remedy for a specific type of case', within the meaning of Section 6 of Art. 31A." [4]

That the *Tawes* and *Cambridge* cases are in fact distinguishable was demonstrated in *Schneider v. Pullen*, 198 Md. 64, 81 A. 2d 226 (1951), a case involving a challenge by a barber to an act providing for the certification and regulation of private trade schools. There the appellant had filed a bill of complaint for an injunction and declaratory decree in which he requested a determination that the entire act was unconstitutional. In holding that the question of the constitutionality of the Act could be attacked in such a proceeding, the Court said at 68-69:

"We have, however, been careful to point out that *where constitutional questions are involved,* the

4. This distinction is preserved in the present statute by subsections (b) and (c) of § 3-409 of the Courts Article.

litigant has the right to raise them in a court of equity, and such court has the right to consider them. That is true whether the question is raised in an ordinary suit for injunction, or in a bill for a declaratory decree. *Kahl v. Cons. Gas Co.*, 191 Md. 249, 258, 60 A. 2d 754; *Commissioners of Cambridge v. Eastern Shore Public Service Co., [supra]; Francis v. MacGill,* 196 Md. 77, 75 A. 2d 91; *Kracke v. Weinberg,* 197 Md. 339, 79 A. 2d 387. Appellant has a special interest in bringing this proceeding because he is engaged in the business of operating a trade school, and therefore must, under the terms of the statute, obtain a permit. He *does not* have to apply for this permit, and then, if it is refused, take the various appeals outlined in the statute, in order to raise *the constitutional question of the validity of the act as a whole.* That has been raised by a proceeding in equity in many cases. *Gordon v. Montgomery County,* 164 Md. 210, 164 A. 676; *Kracke v. Weinberg, supra.* The appellant had the undoubted right to raise the questions he does as to *the constitutionality of the statute* by means of the bill in equity he filed." (italics supplied).

The limitations to be observed, however, in the granting of declaratory relief under such circumstances were stated at page 71 where the Court, in effect, restated the principle enunciated in *Tawes:*

"In the case before us, the appellant also attempts to attack the rules and regulations proposed by the State Superintendent of Schools, which he files as exhibits. We do not think, however, these regulations can be considered in such a proceeding as this. The appellant does not allege that he has applied for a permit, or that he could not obtain a permit under these regulations, or that he could not comply with them. He has his remedy if he cannot obtain a permit under them by taking the appeals already outlined, and in such

appeals he can raise the question of the unreasonableness or arbitrary nature of these rules, or any of them. And, when he is given notice of the passage of such regulations, he is entitled to a hearing before the State Superintendent of Schools, and before the State Board of Education. (Subsection (d)). In such hearings, he has ample opportunity to raise any objections he may have to the validity or the necessity of the regulations proposed. With respect to these regulations, *as distinguished from the act itself,* he is obligated to adopt the statutory procedure outlined, and cannot by-pass it." (emphasis supplied).

That the Court of Appeals intended *Tawes v. Williams, supra,* to continue as a viable precedent was evidenced by *Reiling v. Comptroller,* 201 Md. 384, 94 A. 2d 261 (1953), which case arose out of an assessment of an estimated income tax allegedly due by a taxpayer who had failed to file a State income tax return. The taxpayer maintained that he was domiciled and remained a citizen of Illinois although he resided and owned a dwelling in Chevy Chase, Maryland. He did not avail himself of his right to the several hearings provided under Art. 81 but after the expiration of the time for appeal sought an injunction and a declaration that the assessment was null and void. The court below sustained a demurrer and in affirming the action of the trial court, the Court of Appeals said at 388-89:

"We have pointed out in a number of recent cases that where a constitutional issue is raised, and there is no danger of by-passing administrative action, the question may properly be decided in an equity proceeding, or one for a declaratory decree, before the time has arrived for invoking the statutory remedy. [citations omitted]. *It may be noted, however, that none of these were tax cases.*

"The case of *Tawes v. Williams, supra,* is closely in point. It was there held that an assessment of income tax, including within the

taxable basis income received from a foreign fiduciary, could only be attacked, even on constitutional grounds, on direct appeal, and not by a proceeding for a declaratory decree. On the last point the authority of the decision is somewhat shaken by subsequent amendments of the Declaratory Judgment Act. See *Cambridge v. Eastern Shore Public Service Co.* and *Schneider v. Pullen, supra.* However, these amendments, and our decisions, recognize that where a statute provides a special form of remedy for a specific type of case, that statutory remedy must be followed. The gravamen of the decision in the *Williams* case was that the legislature intended to make the statutory remedy exclusive. In tax assessment cases there are special reasons why there should be finality upon failure to exercise the statutory right of appeal, and collateral attack should be prohibited. *Cf. Wasena Housing Corp. v. Levay,* 188 Md. 383, 52 A. 2d 903, and *American Bank Stationery Co. v. State, supra.* Questions involving jurisdiction to tax income from particular sources have repeatedly been decided on direct appeal. *Wood v. Tawes, supra; Gordy v. Dennis,* 176 Md. 106, 5 A. 2d 69. This court has never overruled the *Williams* case on this point, and we see no occasion to do so now, when it has been tacitly accepted by the legislature as a correct interpretation of its intention." (emphasis supplied).

Declaratory relief was denied in *Tanner v. McKeldin,* 202 Md. 569, 97 A. 2d 449 (1953), in which case residents of a Federal military installation (Camp Detrick) sought advisory declarations as to the applicability of a number of State laws to residents on property in Maryland owned by the Federal government. On the specific issues of their liability for State income taxes under the Maryland statute, the Court reaffirmed that it is mandatory that the court comply with the statutory direction of Section 6 of the

Declaratory Judgments Act — that whenever another statute provides a special form of remedy for the specific case presented, that that statutory remedy shall be followed. *See also Poe v. Mayor and City Council,* 241 Md. 303, 216 A. 2d 707 (1966); *Mayor and City Council v. Seabolt,* 210 Md. 199, 123 A. 2d 207 (1956).

In *Hartman v. Prince George's County,* 264 Md. 320, 286 A. 2d 88 (1972) the Court held that a bill for declaratory judgment should have been dismissed where landowners had statutory remedies under a zoning ordinance. It concluded that Section 6 of Art. 31A was controlling, and the applicants for declaratory relief were required to follow the special form of remedy provided for the specific type of case.

The Uniform Declaratory Judgments Act was repealed by the Acts of 1973, 1st Spec. Sess., Ch. 2, Sec. 1, and re-enacted as Code, Courts & Judicial Proceedings Article (1974) § 3-401, et seq. Subsection 3-409 (b) reflects the intention of the Legislature that declaratory judgment proceedings not be used as a means of by-passing administrative remedies. It states: "If a statute provides a special form of remedy for a specific type of case, that statutory remedy shall be followed in lieu of a proceeding under this subtitle."

Our analysis of the law convinces us that the trial court in this case should not have accepted jurisdiction over the issues raised by the Commission's petition for declaratory relief and injunction because the dispute between the parties was already pending before the agency created by the Legislature, for the express purpose of resolving controversies involving tax liabilities. The Legislature had provided a careful and detailed procedure for full and complete hearing and determination of all factual and legal disputes which might arise in this highly specialized area of the law. It had further assured any aggrieved party ample opportunity to have the final decision of the Maryland Tax Court reviewed by the circuit court and by the appellate courts. In such circumstances, having elected its remedy, the appellant should not have been allowed to proceed in the

courts under the Declaratory Judgment Act. The circuit court abused its discretion in entertaining the action.

We conclude that the alleged estoppel and waiver contained in Paragraph 6(c) of the lease agreement between the Commission and WNA raises issues which should be determined by the Maryland Tax Court.

Borchard, in his work on Declaratory Judgment,[5] states that the two principal criteria guiding the policy in favor of rendering declaratory judgments are: 1) when the judgment will serve a useful purpose in clarifying and settling the legal relations in issue, and 2) when it will terminate and afford relief from the uncertainty, insecurity and controversy giving rise to the proceeding. Neither of these criteria is found in the instant case. If we sustain the conclusion of the trial court that Paragraph 6(c) is against public policy then the parties will be reinstated to the decision of the Appeals Board that neither the land nor improvements were taxable and the appellants would then be free, to pursue the appeal now pending before the Maryland Tax Court and further avail themselves of the statutory appeal remedies to the circuit court and this Court. Should the Appeals Board decision subsequently be reversed by a reviewing court, the amount of the assessment would remain an open question. On the other hand if we reverse the decision of the trial court and find that Paragraph 6(c) is not against public policy, then we would foreclose the appellee from contesting an assessment which the Board has already found to be erroneous and illegal. Under these circumstances, we believe the trial court should have declined to assume jurisdiction.

The matter is, even now, pending before the Maryland Tax Court for trial de novo, and we believe that that court should not be divested of its jurisdiction over all the issues raised by

5. Borchard, *Declaratory Judgments*, p. 289 (2d ed. 1941).

**362**

this controversy. We shall, therefore, vacate the order of the trial court and dismiss the petition for declaratory relief and injunction.

> *Order vacated.*
>
> *Petition for declaratory relief and injunction dismissed.*
>
> *Costs to be divided among all parties.*