## SUPERVISOR OF ASSESSMENTS OF PRINCE GEORGE'S COUNTY ET AL. v. WASHINGTON NATIONAL ARENA LIMITED PARTNERSHIP

[No. 1248, September Term, 1978.]

*Decided June 12, 1979.*

The cause was argued before GILBERT, C. J., and LOWE and MACDANIEL, JJ.

*Peter W. Taliaferro, Assistant Attorney General,* with whom was *Stephen H. Sachs, Attorney General,* on the brief, for appellant Supervisor of Assessments of Prince George's County. *David S. Bliden, Associate County Attorney for Prince George's County,* with whom was *Robert B. Ostrom, County Attorney,* on the brief, for other appellant.

*Glenn T. Harrell, Jr.,* with whom were *Peter F. O'Malley* and *O'Malley, Miles, Farrington & McCarthy* on the brief, for appellee.

GILBERT, C. J., delivered the opinion of the Court.

"This is the Fourth ...,"[1] not of July, but time that a variation of this matter has been before the appellate courts of this State.[2] Hopefully, it is the last time.

The issue presented by this appeal is whether the leasehold interest of the appellee, Washington National Arena Limited Partnership (WNA), in the land and improvements on the property of Maryland-National Capital Park and Planning Commission (MNCPPC) is exempt from county and State real property taxation under Md. Ann. Code art. 81, § 8 (7) (e) as a "concession for occupancy of a public park."[3] Underlying,

1. Thomas Jefferson, 1743-1826, *Last Words,* July 4, 1826.
2. *See* Maryland-National Capital Park and Planning Commission v. Washington National Arena, 282 Md. 588, 386 A. 2d 1216 (1978); Maryland-National Capital Park and Planning Commission v. Washington National Arena, 37 Md. App. 346, 377 A. 2d 545 (1977) *rev'd* 282 Md. 588, 386 A. 2d 1216 (1978); Maryland-National Capital Park and Planning Commission v. Washington National Arena, 30 Md. App. 712, 354 A. 2d 459 (1976).
3. Md. Ann. Code art. 81, § 8 (7) (e) provides in pertinent part:

"§ 8. Enumeration of taxable property.

The following property, except as in §§ 9, 9A, 9B, and 10 provided, shall be subject to assessment to the owner (except shares of stock which shall be subject to assessment to the issuing corporation) and taxation for ordinary taxes in this State and the county and/or city specified below:

. . . .

(7) *Leaseholds and other limited interests in real or personal property.* — No leasehold or other limited interest in real or tangible personal property shall be subject to taxation except the following which shall be subject to taxation in the same amount and the same extent as though the person in possession or the user thereof were the owner of such property.

. . . .

(e) The interest or privilege of any lessee, bailee, pledgee, agent or other person in possession of or using any real or personal property which is owned by the federal or State governments, and which is leased, loaned, or otherwise made available to any person, firm, corporation, association, or other legal entity, with the privilege to use or possess such property in connection with a business conducted for profit, except where the use is by way of concession for occupancy of a public airport, *park,* market, or fairground, which is available to the use of the general public, shall be subject to taxation in the same amount and to the same extent as though the lessee or user were the owner of such property,

but close to the surface, is a secondary question of what is a "public park." [4]

The facts giving rise to this case are uncontroverted. On November 21, 1966, the Maryland State Roads Commission and the Board of Public Works conveyed to MNCPPC the "Kuenne Tract," a 75.31 acre parcel of land in Prince George's County. At the time of the conveyance, the land was in its natural state.

Reacting to a county policy of development of cultural centers, MNCPPC, in 1971, began to formulate plans to improve the "Kuenne Tract." In furtherance of those plans, the Prince George's County Planning Board authorized MNCPPC to enter into a lease with Potomac Sports Ltd. (Potomac) for construction and operation of a sports and recreation complex on the "Kuenne Tract."

A lease was executed between MNCPPC and Potomac in August 1971. Under the terms of the lease, Potomac agreed to lease 50 acres of the Kuenne parcel and to make certain improvements which would be used by Potomac, but owned by MNCPPC. The lease was operative for a 20 year base term, with two successive options of renewal for 10 year periods.

Subsequently, Potomac opted not to undertake performance and, with the consent of MNCPPC, assigned the lease to WNA. Later, MNCPPC and WNA entered into a "Shared Park-Arena Area Agreement" by which MNCPPC leased an additional 10 acres of the remaining 25.31 acres to WNA for parking facilities adjacent to the proposed "sports and recreation" complex. As part of the agreement, MNCPPC was entitled to designate "play areas," which "areas" were not to interfere with WNA's right to park vehicles during the time the sports arena was in use.

provided, that the foregoing shall not apply to federal or State property for which negotiated payments are made in lieu of taxes by any of the aforesaid owners . . . ." (Emphasis supplied.)

4. There appear to be many definitions of a "park." Some lexicographers disagree as to its meaning, and clarity has not been aided by judicial definitions of the word. Indeed, the meaning of the word "park" seems to fall somewhere near Mr. Justice Stewart's remark relative to pornography. "I shall not today attempt to further to define [it] . . . [b]ut I know it when I see it . . . ." Jacobellis v. Ohio, 378 U. S. 184, 197, 84 S. Ct. 1676, 1683, 12 L. Ed. 2d 793, 803-04 (1964).

The County issued a building permit on September 13, 1972, and work commenced on the project. When completed, the WNA facility, known as the Capital Centre, and its adjacent parking lots covered 60 acres of the "Kuenne Tract." Fifteen acres remain in their natural state. Since its opening on December 2, 1973, the public has had an opportunity to view, within the arena, professional sporting events, circuses, shows, exhibitions, fairs, and concerts. Admission to most of the events is by payment of a fee, but some admissions are gratuitous.[5]

On January 9, 1974, the Supervisor of Assessments of Prince George's County, dispatched a Notice of Assessment to MNCPPC based upon the value of the 50 acre parcel subject to the lease, and the 10 acre tract covered by the "Shared Park-Arena Area Agreement." By so doing, the Supervisor began this litigation. Within a matter of days, WNA protested the assessment. Less than a month later, February 22, 1974, a "Notice of Proposed Assessment" was sent by the Supervisor to MNCPPC. A final notice was sent in November 1974 to MNCPPC. No change was made in the assessment from that which was proposed in February. WNA appealed to the County Board of Property Tax Assessment Appeals. The Board, in reversing the Supervisor's determination on the taxability of the property said:

"1) Neither the land nor improvements that are the subject matter of this proceeding are owned by the State of Maryland.

2) That even if the said land and improvements were owned by the State of Maryland, the property would be exempt from taxation under Article 81, Section 8, Subsection 7 (e) which exempts property

---

5. Mr. Abe Pollin, the sole general partner and a limited partner in WNA testified before the Tax Court:

"Well, we've had things like concerts that are for the public that we haven't charged for.

Each of the events even though they are admission events, we feel a responsibility to the community, so we have people that come to our events, every event, that do not pay; and these are people — orphanages, veterans, elderly. We've had hundreds of those people come to the events at the Capital Centre."

'used by way of a concession for occupancy of a park.' "

The Supervisor appeals to the Tax Court.[6] He fared no better before that body then he did with the Board. The Tax Court, however, found that a park is "an area set aside for public recreation" and that under that definition WNA's Capital Centre was exempt from taxation pursuant to Md. Ann. Code art. 81, § 8 (7) (e).

Chagrined at the decision of the Tax Court, the Supervisor appealed to the Circuit Court for Prince George's County. While that appeal was pending, the Court of Appeals held, in *Maryland-National Capital Park and Planning Commission v. Washington National Arena, supra,* that WNA was precluded by terms of the lease from contesting an assessment of the improvements on the 50 acre tract. Thus, that assessment is adjudicated and we are faced only with the assessments of the 50 acres of land under the lease, plus the 10 acres of land under the Shared Park Agreement, and the improvements located on that 10 acres.

The circuit court affirmed the holding of the Tax Court. The Supervisor refused to accept defeat and noted an appeal to this Court.

Judicial review of Tax Court decisions is severely limited. *Fairchild Hiller Corp. v. Supervisor of Assessments,* 267 Md. 519, 521, 298 A. 2d 148, 149 (1973); *Comptroller of the Treasury v. Machiz,* 42 Md. App. 218, 399 A. 2d 946 (1979).

Md. Ann. Code art. 81, § 229 (o) provides:

"In any case, the circuit court for the county or the Baltimore City Court shall determine the matter upon the record made in the Maryland Tax Court. The circuit court or Baltimore City Court shall affirm the Tax Court order if it is not erroneous as

---

**6.** In the interim a battle was raging on a second front, *see* n. 2, *supra.* WNA was asserting, ultimately unsuccessfully, that its contractual agreement not to contest assessments on the improvements made on the 50 acre land was void as against public policy.

> a matter of law and if it is supported by substantial evidence appearing in the record. In other cases, the circuit court or Baltimore City Court may affirm, reverse, remand, or modify the order appealed from."

Unless the ruling of the Tax Court is "erroneous as a matter of law," it will be affirmed, provided that "it is supported by substantial evidence ... in the record." *Comptroller of the Treasury v. Mandel Re-Election Committee,* 280 Md. 575, 578, 374 A. 2d 1130, 1131-32 (1977); *Supervisor of Assessments v. Southgate Harbor,* 279 Md. 586, 595-96, 369 A. 2d 1053, 1058 (1977); *Comptroller of the Treasury v. Diebold, Inc.,* 279 Md. 401, 407, 369 A. 2d 77, 81 (1977); *Comptroller of the Treasury v. Machiz, supra.*

Just as the Court, in *Comptroller of the Treasury v. Mandel Re-Election Committee, supra,* saw that case as "essentially one of statutory construction and a question as to whether the presentation of the music ... constituted, as a matter of law, a performance ..." (thus requiring payment of an admission tax) so, too, do we perceive the issue in the matter *sub judice* to be "one of statutory construction and a question as to whether" the 10 acres of land and improvements thereon, together with the original 50 acres of land, are a "park" within the meaning of Md. Ann. Code art. 81, § 8 (7) (e).

Maryland law is firmly established that statutory exemptions to tax provisions are to be construed strictly in favor of the taxing authority. Should there be real doubt as to the appropriateness of an exemption, the uncertainty "*must* be resolved in favor of the State." [7] *Perdue, Inc. v. State Department of Assessments & Taxation,* 264 Md. 228, 233, 286 A. 2d 165, 167 (1972); *Pittman v. Housing Authority,* 180 Md. 457, 460, 25 A. 2d 466, 468 (1942). *See also Suburban Propane Gas Corp. v. Tawes,* 205 Md. 83, 87, 106 A. 2d 119, 121 (1954); *Clarke v. Union Trust Co.,* 192 Md.

---

7. An antithetical construction is placed upon taxing statutes when there is doubt as to the breadth of those statutes. Comptroller v. Md. Specialty Wire, Inc., 37 Md. App. 528, 534, 378 A. 2d 183, 186 (1977), *aff'd,* 282 Md. 538, 385 A. 2d 214 (1978). Such a statute is "construed most strongly ... against the taxing authority." *Ibid.*

127, 137, 63 A. 2d 635, 640 (1949). "To doubt an exemption is to deny it." *Perdue, Inc. v. State Department of Assessments & Taxation, supra,* 264 Md. at 233, 286 A. 2d at 167; *Macke Co. v. State Department of Assessments & Taxation,* 264 Md. 121, 133, 285 A. 2d 593, 599 (1972); *Pan American Sulphur Co. v. State Department of Assessments & Taxation,* 251 Md. 620, 629, 248 A. 2d 354, 359 (1968); *Suburban Propane Gas Corp. v. Tawes, supra,* 205 Md. at 87, 106 A. 2d at 121; *Sindall v. Baltimore City,* 93 Md. 526, 530, 49 A. 645, 646 (1901). Moreover, the Legislature, itself, has directed that all exemptions from taxation are to be construed strictly. Md. Ann. Code art. 81, § 9 (a). As was said by Judge Digges in *Perdue, Inc. v. State Department of Assessments & Taxation, supra,* "[T]he State's taxing prerogative is never presumed to be relinquished and the abandonment . . . [of that awesome power] must be proved by the party asserting the exemption." 264 Md. at 233, 286 A. 2d at 168. Before an exemption will be allowed, the claimant thereto must affirmatively demonstrate that the sought exemption is clearly permitted by law. *Pittman v. Housing Authority, supra,* 180 Md. at 460, 25 A. 2d at 468. In the words of Judge Delaplaine in *Pittman,* "[A]n exemption claim cannot be sustained unless it is shown to be within the spirit as well as the letter of the exemption law." 180 Md. at 461, 25 A. 2d at 468.

The sum and substance of what we have herein said is that in order to benefit from the exemption contained in art. 81, § 8 (7) (e), it was incumbent upon WNA to demonstrate that its leasehold interest amounted to "a concession for occupancy of a public park." To do so it is patent that WNA must have also shown that its complex is a "park."

The noun "park," as used in Md. Ann. Code art. 81, § 8 (7) (e), has not been the subject of interpretation by the appellate courts of this State. The Court of Appeals skirted defining "park" in *Mayor v. Peabody Institute,* 175 Md. 186, 200 A. 375 (1938), wherein the City of Baltimore was devised certain properties, which it was directed to sell. The proceeds of the sale were to be invested in a "public park." The City proposed instead to purchase several playgrounds and sought a

declaration as to the propriety of such action. The Court of Appeals stated:

"We have not undertaken to define a public park. A city, with a park system such as Baltimore has, needs no instruction or definition from us as to what constitutes a public park. What we do say is that a lot of neighborhood playgrounds is not a public park. . . ." 175 Md. at 193, 200 A. at 378.

Courts in other jurisdictions have not been so reticent when faced with defining the word "park." In *Bernstein v. Pittsburgh,* 366 Pa. 200, 77 A. 2d 452 (1951), two taxpayers filed a bill in equity to prevent the City from erecting an open-air auditorium upon a portion of ground devised to Pittsburgh as a "public park." The Pennsylvania Supreme Court permitted the construction and defined a public park as "a tract of ground kept more or less in its natural state, or embellished by the planting of additional trees and flowers, and devoted to the purposes of pleasure, recreation and amusement. . . . In modern times the principal purpose of a park, namely, public recreation, is not limited to physical recreation but includes aesthetic recreation and mental and cultural entertainment as well." 366 Pa. at 206, 77 A. 2d at 455. The Court further opined that the erection of improvements upon park land was permissible but "the entire park acreage or any substantial part of it cannot, of course, be built upon so as unduly to destroy the enjoyment of fresh air, sunshine, and exercise. . . ." 366 Pa. 207, 77 A. 2d at 455.

A similar viewpoint may be found in *McLauthlin v. The City and County of Denver,* 131 Colo. 222, 228, 280 P. 2d 1103, 1106 (1955), where the Colorado Supreme Court penned:

"In this jurisdiction we have adopted the modern concept for a dedicated public park. That while an entire area of a park may not be converted to playground or recreational uses; nevertheless, when, considering the size and location of the park, its environments, density of adjacent population and their public needs, it is proper and legitimate that a reasonable portion of a park area be set aside and

used for playground and recreational purposes. These uses would include tennis courts, playground and dancing facilities, skating, a swimming pool and bathhouse, horseshoe pitching, walking, horseback riding, athletic sports and other outdoor exercises, as may be needed, and if conditions are conducive therefor, golfing and baseball with the necessary equipment therefor, and with car parking facilities for the use and convenience of patrons and the public; provided always that a substantial portion of the park area remains in grass, trees, shrubs and flowers, with seats and tables for picnicking, for the use by, and enjoyment of, the public."

10 McQuillin, *The Law of Municipal Corporations,* (3rd ed.) § 28.50, is in accord. That author defines a "public park" as "an open expanse of land, having some resemblance to land in its natural, unimproved condition, although an area may be no less a park because there are within its boundaries buildings, structures, and other improvements, and roads and streets, although a park is not merely a street, nor a mere playground or athletic field, notwithstanding such facilities commonly are included within a park." (Footnotes omitted.) [8]

We think a public park may be defined as a tract of land generally maintained in its natural state, although it may have within its geographical confines buildings, monuments, or improvements in the form of stadiums, ball fields, and swimming pools, which items may not occupy a substantial portion of the park property, and they are and remain subordinate to the primary purpose of park land: the availability to the citizenry of open space for recreation and the enjoyment of sunshine and air. In sum, a public park is no longer a park when the structures or improvements so circumscribe the potential use of the greater portion of the property to the detriment of the enjoyment of open space in its natural state.

WNA has endeavored to equate its sports arena to a park because it is available to the general public, upon payment of

---

8. *See* Salem v. Attorney General, 344 Mass. 626, 183 N.E.2d 859 (1962).

an admission charge, and the lease, as assigned, "stated the sports arena would be a 'public park or recreational area' " and the "Shared Park-Arena Area Agreement" provided the 10 acres leased thereunder would be a "play area" when not in use as parking in conjunction with activities at the arena. Every facility for public recreation, however, is not a public park. *Mayor and City Council v. Peabody Institute, supra.* Moreover, availability to the public does not make the sports arena a park any more than is a theatre or parking lot, which is also available to the public, upon payment of an admission fee. Furthermore, the fact that the lease and shared plans refer to the facility and the remaining portion of the original "Kuenne Tract" as a park does not make it a park any more than a similar reference would make kittens born in an oven biscuits.

As matters stand, the WNA occupies 79.67% of the 75.31 acre tract. The balance or 20.33% is all that remains in any condition approaching the "natural state." Patently, the sports complex has become dominant. The arena and adjacent parking lot can hardly be said to enhance the purpose of a park, that is, the providing of natural open space; rather they enhance the commercial interest of WNA.

We doubt that the Capital Arena Complex and adjacent parking lot can be considered as a park. Under the decisions of the Court of Appeals in *Perdue, Inc. v. State Department of Assessments & Taxation, supra; Macke Co. v. State Department of Assessments & Taxation, supra; Pan American Sulphur Co. v. State Department of Assessments & Taxation, supra; Suburban Propane Gas Corp. v. Tawes, supra; Sindall v. Baltimore City, supra,* "to doubt an exemption is to deny it." Consequently, our doubt translates into a denial of the exemption.

We believe the Tax Court erred as a matter of law in construing Md. Ann. Code art. 81, § 8 (7) (e) as providing an exemption from taxation to WNA on the ground that the leased property is a park.

In view of our holding, we do not reach the issue of whether the lease is a concession because if the property in question is not a park, the concession issue is irrelevant.

One final matter need be addressed. WNA points out that Md. Ann. Code art. 66D, § 5-109 exempts land acquired by MNCPPC from "State, county, and municipal taxes," and the land in the matter *sub judice* was so acquired. The matter was not, however, raised and decided before the circuit court. It is not before us. Md. Rule 1085, *but see Firestone Tire & Rubber Co. v. Supervisor of Assessments,* 275 Md. 349, 340 A. 2d 221 (1975).

We believe the circuit court erred in affirming the Tax Court's holding.

*Judgments reversed.*
*Costs to be paid by appellee.*