UNITED STATES of America, Shaw
Enterprises, Inc., Holiday Inn of
Chevy Chase, Appellees,

v.

MONTGOMERY COUNTY, MARYLAND
and Albert W. Gault, Director, Depart-
ment of Finance, Montgomery County,
Maryland, Appellants.

No. 84–1432.

United States Court of Appeals,
Fourth Circuit.

Argued Jan. 10, 1985.

Decided May 9, 1985.

H. Christopher Malone, Sr. Asst. County
Atty., Rockville, Md. (Paul A. McGuckian,
County Atty., Robert G. Tobin, Jr., Deputy
County Atty., Rockville, Md., on brief), for
appellants.

Ann Belanger Durney, Tax Div. Dept. of
Justice, Washington, D.C., John B. Walsh,

Jr., Silver Spring, Md. (J. Frederick Motz, U.S. Atty., Max H. Lauten, Asst. U.S. Atty., Baltimore, Md., Glenn L. Archer, Jr., Asst. Atty. Gen., Michael L. Paup, John M. McCarthy, Richard A. Correa, Tax Div. Dept. of Justice, Washington, D.C., on brief), for appellees.

Before WINTER, Chief Judge, and PHILLIPS and MURNAGHAN, Circuit Judges.

MURNAGHAN, Circuit Judge.

As of July 1, 1971, Montgomery County, Maryland imposed by local statute a tax on each and every transient renting hotel and motel sleeping accommodations. *See* Montgomery County Code, 1972, Sec. 52–16 (Supp.1977). A transient was defined as a person "who ... obtains sleeping accommodations" for seven consecutive days or less.[1] Consequently, the operative word chosen as the incident of the tax was the transient "obtainer" of the sleeping accommodations.[2] Things proceeded uneventfully for a time, at least insofar as the present case is concerned, but then two things happened.

First, the National Institutes of Health, if not an arm at least a finger of the United States Government, since 1971 have instituted a policy of providing sleeping accommodations to outpatients under one or more of the programs conducted by the National Institutes. The patients have come to Bethesda, Maryland or its environs for treatment, the elapsed periods of their stays in hotels and motels in the area lasting no more than seven consecutive days. The NIH arranged with a private hostelry, United Inn of America,[3] as an independent contractor, to supply accommodations, with NIH undertaking to meet room costs.

Second, in 1980, Montgomery County made an assessment covering the period commencing October 1976, through October 1980, of the tax asserted to be due from United Inn as the statutorily designated tax collector. The rentals for rooms occupied by NIH outpatients were the nexus of the assessment. The assessment was followed up in January, 1981, with an action against United Inn to compel payment, filed in the Circuit Court for Montgomery County. The NIH resisted the imposition, contending that it fell directly on an agency of the United States Government and so violated the Supremacy Clause of the United States Constitution.[4] Apparently the uncertainty as to whether the contention would prevail was sufficient for United Inn on November 1, 1981 to succeed in obtaining from the NIH an undertaking for reimbursement of any transient taxes found to be due and payable on the transactions which occupy our attention.

On March 19, 1982, to bring the matter to a judicial head, and perhaps in hopes of finding a more sympathetic forum in the federal courts, the United States brought suit in the United States District Court for the District of Maryland for a declaratory judgment that the tax was unconstitutional as applied to the United States. The state court action having been stayed, the matter proceeded in the United

---

1. Amendments in 1975 and 1984 have occurred. The 1975 amendment, raising the tax rate from 3% to 5%, did not affect in any material way the question presented by the appeal under consideration. Neither, for reasons hereinafter alluded to, did the 1984 local law.

2. The tax collecting duty fell upon the person receiving payment of the room rental, *i.e.*, the hotel or motel. The tax itself was levied on the transient obtainer of sleeping accommodations, exactly who that has been being the crux of the case.

3. Shaw Enterprises, Inc. owned United Inn. It was, without objection, on motion of Montgomery County and its codefendant, the County's Director of Finance, joined as a party plaintiff.

Also, as someone engaged in similar transactions with another agency or agencies of the United States Government, Holiday Inn of Chevy Chase, Maryland was permitted to intervene as a party plaintiff.

4. *E.g., McCulloch v. Maryland,* 4 Wheat. (17 U.S.) 316, 4 L.Ed. 316 (1819); *United States v. New Mexico,* 455 U.S. 720, 102 S.Ct. 1373, 71 L.Ed.2d 580 (1982); *Washington v. United States,* 460 U.S. 536, 103 S.Ct. 1344, 75 L.Ed.2d 264 (1983).

States District Court to the summary judgment stage where, by a feat of statutory interpretation, Judge Edward S. Northrop, on January 19, 1984, concluded that, while a) the tax fell on the transient obtainer of the sleeping accommodations in the hotel or motel and b) the United States was the obtainer, nevertheless, the United States was not a person [5] as defined in the local statute of Montgomery County. 586 F.Supp. 227 (D.C.1984). Hence the United States could not be deemed a transient ("Any person who ... obtains sleeping accommodations ..."). Not a transient, Judge Northrop reasoned, the United States was not liable for the tax. Also, he opined that a NIH guest was not the taxpayer since he or she did not "obtain" the room.

Judge Northrop put reliance on the fact that "person" is defined as including: "Any individual, corporation, company, association, firm, copartnership, or any group ..., and any trustee, receiver, assignee or personal representative." He reasoned that many of the entities listed could not occupy the room, so "person" would not mean the occupant of the sleeping accommodations, even though an individual specifically is identified as a person.

We find the rationale unpersuasive. The definitions set forth in the statute apply to all its provisions. The term "person" is used in other sections to describe the entity receiving any payment for room rental, the person collecting any such tax, the person operating a hotel, motel or other similar place. In those instances, corporations (Shaw Enterprises, Inc. for instance) and associations and firms (Holiday Inn of Chevy Chase was a partnership) fell within the scope of the definition of "person." So the fact that a transient person could only be an individual and not a corporation insofar as one section of the statute was concerned has no significance, given that a) a person may be an individual and b) corporation clearly was encompassed by "person" for the purposes of other sections. The statute explicitly dealt with that very consideration in the introductory language to the definitional sections: "The following words and phrases ... shall ... have the following meanings, except where the context clearly indicates a different meaning."

▪ Conceptual difficulties may conceivably arise since the case, as it was resolved in the district court, while commencing as an attack on the constitutionality of the room rental law, ended up with a purely statutory construction which avoided the constitutional question altogether. Of course, insofar as the original plaintiff, the United States, is concerned, it is elementary that the Anti-Injunction Statute, 28 U.S.C. § 1341, does not operate to bar the Federal Government from seeking relief from a tax exaction on constitutional grounds. *Department of Employment v. United States*, 385 U.S. 355, 358, 87 S.Ct. 464, 466, 17 L.Ed.2d 414 (1966). Yet there is the small difficulty that Judge Northrop's decision was based on construction of a state statute, not on constitutional grounds. Perhaps, applying the anti-injunction statute, the case should have been remitted to the Montgomery County Circuit Court since, on either approach, Judge Northrop's or Montgomery County's, the tax was not levied on the United States. *See United States v. Livingston*, 179 F.Supp. 9, 12 (D.S.C.1959, three-judge court, opinion by Haynsworth, J.), *aff'd*, 364 U.S. 281, 80 S.Ct. 1611, 4 L.Ed.2d 1719 (1960).[6]

It must not be ignored, however, that Judge Northrop apparently appreciated that, on his view of the statute's meaning, he had avoided a constitutional confrontation by his determination that the United States was not a person. He presumably

---

5. The term person customarily does not encompass the United States. *United States v. Cooper Corp.*, 312 U.S. 600, 604, 61 S.Ct. 742, 743, 85 L.Ed. 1071 (1941).

6. The standing of the two private hotel or motel operators certainly would be suspect, *see Stres-* con Industries, Inc. v. Cohen, 664 F.2d 929 (4th Cir.1981). However, the question is academic, since the resolution of the claims advanced by the NIH necessarily clears away the contentions of Shaw Enterprises, Inc. and Holiday Inn of Chevy Chase.

employed the accepted canon of construction that a court is justified, indeed compelled, to avoid reaching constitutional questions when other grounds for decision are present. *See Ashwander v. Tennessee Valley Authority*, 297 U.S. 288, 347, 56 S.Ct. 466, 483, 80 L.Ed. 688 (1936) (Brandeis, J., concurring).

On review, we do not disagree that a constitutional obstacle of controlling importance would exist if the Montgomery County local statute had indeed imposed the tax directly on the United States as the entity which booked the rooms, irrespective of who slept in them. The fact that such was the Government's sole contention when it brought the action suffices, in order to spare the necessity for the parties to start the litigation all over again, for us to consider the merits of the appeal.

Considering the merits, we disagree with the interpretation placed by the district court on the word "obtainer." The provision cutting off the tax for transactions where the room would be obtained for more than seven days is simply inconsistent with such an interpretation. A private hospital booking sleeping accommodations for outpatients, each using the room *seriatim* for only a day or two, would, on Judge Northrop's reading of the statute, be free of the tax if a room were rented for eight or more days, with the occupants changing every couple of days. We simply cannot ascribe such an intent to the Montgomery County Council. *Cf. Coerper v. Comptroller of the Treasury*, 265 Md. 3, 6, 288 A.2d 187, 188 (1972).

As a variation of that theme, consider that the objective was obviously to tax transients.[7] The outpatients have come and gone in a fashion amply fitting description as transients. The corporate body, whether a private entity, firmly ensconced at or near the hotel or motel site, or the United States Government which arranges a room for a month or more which is occupied only a day or two at a time by any one visiting employee or guest simply does not meet the definition of "transient."[8] That is especially true for the non-peripatetic National Institutes of Health, permanently situated in Bethesda, and visited for short periods by numerous out-patients needing brief term, often only overnight, accommodation. The NIH are there to stay, in no way transient. "Transitory, passing, ephemeral, momentary, fleeting, evanescent,"[9] each fits the overnight guest. Use of those words for entities such as the NIH is simply inapposite.

Thus, while in a sense, the NIH, in making and paying for reservations, have been "obtaining" the rooms for use by others, they have not done so as a transient. In other words, to "obtain" a hotel room does not mean exclusively or even principally to book the room for others. Reasonably included within the umbrella of meaning of the term "obtain" is the concept of achieving actual physical possession and use.[10] To obtain entry is a not uncommon phrase which applies to occupancy as well as, or even more than, arrangement for the use by others.

Of course, it is a well settled Maryland rule that, even as statutory tax exemptions "are to be strictly construed in favor of the taxing authority" so, antithetically, a law imposing a tax liability is "construed most strongly ... against the taxing authority." *Supervisor of Assessments of Prince George's County v. Wash-*

---

7. The tax is "levied and imposed on each and every transient."

8. A small but intriguing point derives from the definition of a transient as: "Any person who ... obtains sleeping accommodations, either at *his* own expense or at the expense of another...." (Emphasis supplied). The masculine pronoun "his" simply does not extend to the United States, or to other non-individuals, which renders the statute strangely ungrammat-ical if the NIH argument is to have any substance.

9. *See* Websters Third New International Dictionary, p. 2428.

10. The primary meaning of "obtain" is "to gain or attain possession." "Hold," "keep," "possess," and "occupy" are recognized synonyms. Webster's Third New International Dictionary, p. 1559.

*ington National Arena Limited Partnership*, 42 Md.App. 695, 700 & n. 7, 402 A.2d 148, 151 & n. 7 (1979). But those generalizations only assist when there is indeed ambiguity. "Nevertheless, while tax exemption statutes are to be strictly construed, this principle permits a fair interpretation in order to effectuate the legislative purpose, and 'it does not require that an unusual or unreasonable meaning be given to the words used....'" *Supervisor of Assessments of Baltimore County v. Trustees of Bosley Methodist Church Graveyard*, 293 Md. 208, 213, 443 A.2d 91, 94 (1982).[11] The governing rule is always to ascertain the true intent of the legislature,[12] and, when that is possible, one should not employ a contrary-pointing presumption to deny an intended exemption or to disallow imposition of a tax meant to be imposed.

■ Here the essence of the legislative intent is apparent, and in no way ambiguous. The tax was directed against the transient occupier of a room for a relatively short period of time, not, in the first instance at least, against the person whom the transient was visiting and who, as a genial host, had booked accommodations. If the entity booking sleeping accommodations were the intended taxpayer, the County Council of Montgomery County would have acted with great imprudence, an assumption not lightly to be drawn. *See The Swarthmore Co. v. Kaestner*, 258 Md. 517, 527, 266 A.2d 341, 346 (1970). Anyone with a large volume of visitors then could escape the tax simply by renting for more than seven days, while, all the same, turning over occupants on a daily or weekly basis. That interpretation is wholly at war with the concept of a tax on transients.

Of course, taxation is an eminently practical matter, and, if the host wants to volunteer to pay the tax, the entity imposing it, here, Montgomery County, is not going to object if the hotelier, serving as the statutory tax-collector, in handing over the correct sum due the County, "erred" slightly as a formal matter by taking the money from the "wrong" source.[13]

That is what the case is all about, and a tenuous argument centered on an unrealistic assignment of a restricted meaning to the term "obtainer" of the sleeping accommodations should not prevail. Since the tax falls on the transient, the occupant of the sleeping accommodations, the fact of reimbursement by the United States or one of its agencies does not invalidate it under the supremacy clause. *E.g., United States v. New Mexico*, 455 U.S. 720, 735, 102 S.Ct. 1373, 1383, 71 L.Ed.2d 580 (1982); *Alabama v. King and Boozer*, 314 U.S. 1, 8–9, 62 S.Ct. 43, 45, 86 L.Ed. 3 (1941).

There remains for disposition an argument fashioned on the amendment in 1984 of the statute to restate the definition of "transient" to read:

> Any person who for any period of not more than seven consecutive days actually occupies sleeping accommodations, in any hotel or motel providing sleeping accommodations for which a charge is made.

The definition for a person was revised to: "A human being." The NIH readily concede that, from and after the effective date of the 1984 legislation, the tax was due from the room occupants and any arrangement made by the National Institutes to reimburse them would be altogether collateral, not invalidating the power to assess the tax against the room occupant and to impose a tax collecting duty on the hotel or

---

**11.** *Cf. McConihe v. Comptroller of the Treasury*, 246 Md. 271, 275, 228 A.2d 432, 434 (1967).

**12.** *E.g., Philbrook v. Glodgett*, 421 U.S. 707, 713, 95 S.Ct. 1893, 1898, 44 L.Ed.2d 525 (1975); *Scoville Service, Inc. v. Comptroller of Treasury*, 269 Md. 390, 306 A.2d 534 (1973).

**13.** It presumably was just such a concern which led United Inn and the NIH, on November 1,

1983, to introduce vouchers by which they, or the cash they represented, were put in the hands of the visitors occupying the sleeping accommodations, which they then turned over to United Inn. That manner of proceeding comports entirely with a construction of the law which makes the transient guests of the NIH the taxpayers, rather than the NIH themselves.

motel owner. Since it appears that, economically, the hotel and motel owners will be fully protected by the reimbursements made by the National Institutes, they really have no present stake in the matter and the question is not yet matured as to them. While we have no occasion to decide the question, it would seem that there is little room for them to argue that, from and after the effective date of the 1984 enactment, they have no obligation to collect and remit the tax.

■ The National Institutes and the two innkeepers[14] argue, however, that, for taxes predating enactment of the 1984 local law, the "amendments" constitute an admission by Montgomery County that the previously existing language did not, through inadvertence or otherwise, reach the transactions at issue here. However, changes in statutory language need not *ipso facto* constitute a change in meaning or effect. Statutes may be passed purely to make what was intended all along even more unmistakably clear. That is the situation here. *Cf. In re Special Investigation No. 236*, 295 Md. 573, 576, 458 A.2d 75, 76 (1983). *See also Brown v. Marquette Savings & Loan Association*, 686 F.2d 608, 615 (7th Cir.1982).

It is true, of course, that a statute which has all along unambiguously proclaimed WHITE cannot retrospectively be made to assert BLACK just because the legislature, at the later date, says so. However, the pre–1984 language with which we here are confronted, in the best posture of things from the National Institutes' point of view, is arguably only ambiguous—and not persuasively so at that. The County Council has doubtless been aware of the controversy, yet in no way has indicated a belief that the County taxing authorities misperceived the Council's meaning. On the contrary,

the Council has supported the taxing authorities, in the end enacting, within months of the district court's adverse decision, emergency legislation to guard against what it no doubt regarded as a judicial misperception by the district judge of its intent in the past,[15] and to insure that, from and after the passage of the 1984 statute, that erroneous possibility could not even arguably arise.[16]

Hence, while the briefs of the parties explored the matter in all its variations at length, we have no occasion to address the sensitive question of the propriety *vel non* of a taxing statute having retroactive effect. The statute, both before and after the effective date of the 1984 statute, has equally imposed its tax on the occupants of the sleeping accommodations.

Accordingly, we reverse the judgment of the district court and remand for entry of an order in harmony with our opinion.

REVERSED AND REMANDED.

---

**14.** Whether Shaw Enterprises, Inc. and Holiday Inn of Chevy Chase are able, in light of the Anti-Injunction Act, 28 U.S.C. § 1341; to assert the point independently is here of no moment. The decision respecting the NIH will effectively dispose of the matter for the room suppliers as well.

**15.** The 1984 local law had specific retrospective effect: "This Act shall apply to: ... (b) All taxes

due and/or assessable for periods within four years prior to the effective date of this Act."

**16.** It is pertinent that the statutory heading of the 1984 act provided for *clarification* of the definitions of "Person," "Transient," and "Hotel or Motel." It also indicated that the legislation was making minor administrative and stylistic changes.